WILLIAM E. FOSTER *et al.,* Plaintiffs-Appellants, v. THE CHICAGO
BOARD OF ELECTION COMMISSIONERS, Defendants-Appellees.

First District (1st Division)   No. 87—0993

Opinion filed November 21, 1988.—Rehearing denied December 20, 1988.

William J. Cooley, of Chicago, for appellants.

Michael Levinson, of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs brought this action to contest a local option election which resulted in the prohibition of the retail sale of liquor in their precinct. The complaint alleged that certain fraudulent acts committed by defendants permeated the balloting and election process prior to and during the day of election. On defendants' motion, the trial court summarily dismissed the action, and plaintiffs appealed. We affirm.

On November 4, 1986, a local option election was conducted in the 16th precinct of the 17th ward of the City of Chicago to determine whether the sale of alcoholic beverages by retail liquor licensees should be prohibited within that precinct. A canvass of the voting completed thereafter established that 85 residents voted "Yes" and 63 residents voted "No."

On December 9, 1986, plaintiffs, a group of registered voters and residents of the 16th precinct, filed a complaint alleging that the results of the election should be vacated because of various improprieties in the assignment of election judges in violation of article 14 of the Illinois Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 14—1 *et seq.*) (Code). They further alleged that the inclusion of the local option referendum on the ballot was prohibited under section 28—1 of the Code (Ill. Rev. Stat. 1985, ch. 46, par. 28—1), as it represented a fourth, and therefore impermissible, question submitted to the voters.

Defendants, the Chicago Board of Election Commissioners and its chairman Michael Lavelle, moved to strike and dismiss the complaint. Following a hearing on the motion, the trial court found in favor of defendants on the ground that plaintiffs' complaint lacked the specificity required by *In re Contest of the Election for the Offices of Governor* (1983), 93 Ill. 2d 463, 444 N.E.2d 170, that the allegations con-

cerning the substitute judges cover actions not prohibited by the Code, and that the "rule-of-three limitation" in section 28—1 of the Code did not apply to local option elections. Plaintiffs appeal the dismissal of their complaint.

The first issue raised by this appeal is whether plaintiffs' complaint sets forth sufficient grounds to contest the results of the election. Summarized, the complaint alleged that the election was invalid for the following reasons: (1) the three substitute judges were not selected from an approved certified list in violation of sections 14—3.1 and 14—3.2 of the Code, were not selected more than five days prior to the election as required by section 14—5, and falsified their polling time; (2) all members of the five-judge panel were female, lived on the same residential block, and signed the petition placing the local option on the ballot; (3) the panel did not represent the appropriate party affiliations under sections 14—3.1 and 14—6; (4) one confirmed judge falsified her party affiliation; and (5) only three judges were present when the polling place opened in violation of sections 14—1 and 14—6.

■ Turning to the relevant case law, it is well established that the failure to plead specific changes in election results sufficient to reverse the outcome of the election is fatal to a pleading initiating an election contest. (*In re Contest of the Election for the Offices of Governor* (1983), 93 Ill. 2d 463, 444 N.E.2d 170; *Zahray v. Emricson* (1962), 25 Ill. 2d 121, 182 N.E.2d 756; *Goree v. Lavelle* (1988), 169 Ill. App. 3d 696, 523 N.E.2d 1078; *Duncan v. Marcin* (1980), 82 Ill. App. 3d 963, 403 N.E.2d 653; *Cooper v. Marcin* (1976), 44 Ill. App. 3d 918, 358 N.E.2d 1218.) This standard was most clearly set forth in *Cummings v. Marcin* (1973), 16 Ill. App. 3d 18, 22, 305 N.E.2d 606, 609:

> "The pleading must specifically allege facts which, if proved, would show that the irregularity complained of will change the results of the election; or that the irregularity, if proved, will impose on the trial court a duty to declare the election void."

■ Applying these principles to the case at bar, it is apparent that plaintiffs' complaint falls short in this respect. Even assuming the election panel was improperly constituted as plaintiffs allege, they fail to aver how many votes would have been changed but for this alleged impropriety and whether that specific number of changes would have altered the election results. Although plaintiffs allege that 267 votes were cast in the election while the signature cards in the precinct registry reveal that only 242 persons voted, nowhere is it alleged that any discrepancy existed between the number of votes cast and the number of ballot applications. Accordingly, any shortage of voting notations on the signature cards is inconsequential.

■ Moreover, pleadings in an election contest charging violations of directory rather than mandatory provisions of the Code, without sufficient allegations of fraud, are subject to dismissal. (*Goree v. Lavelle* (1988), 169 Ill. App. 3d 696, 523 N.E.2d 1078.) As this court noted in *Vanderbilt v. Marcin* (1970), 127 Ill. App. 2d 192, 197, 262 N.E.2d 42, 44, quoting *People ex rel. Earley v. Bierman* (1928), 249 Ill. App. 217, 220-21:

> " 'Generally, mere technical statutory duties relating to elections will, after the election, be held to be directory only and a failure to comply therewith will not invalidate the election if such failure does not affect the fairness or merits thereof, nor obstruct nor prevent a free and intelligent vote of the people and ascertainment of the result.' "

Again, the present complaint fails to state how the alleged violations of merely technical statutory provisions, such as the adequacy of the number of election judges present and the failure to select substitute judges more than five days prior to the election and from a certified list, affected the validity of the election, rendering it the duty of the court to declare the local option defeated. Not only is there nothing in the Code making it unlawful for proponents of a proposition, neighbors, or individuals of the same gender to serve as election judges on a single panel, but also there are no allegations in the complaint that any voters were fraudulently influenced. Given the nonpartisan nature of the election, plaintiffs' objections regarding the judges' party affiliations are also to no avail.

The cases which plaintiffs cite as authority for their charges of fraud are inapposite as they involve violations which made an accurate calculation of the valid and invalid votes impossible. For example, in *Lehman v. Hill* (1953), 414 Ill. 173, 111 N.E.2d 120, hundreds of voters in an election for sheriff of St. Clair County, whose identities could not be ascertained, were given improper assistance at the polls, where political insignia and special policemen bearing arms were present. In *Drolet v. Stentz* (1967), 83 Ill. App. 2d 202, 227 N.E.2d 114, during an election for State's Attorney of Kankakee County, the judges took no voter applications for the first 2½ hours of the election and subsequently mixed those tainted ballots with valid ones. While the allegations in *Lehman* and *Drolet* provided sufficient bases for election contests, no comparable allegations are made here.

The second issue raised by plaintiffs is whether the local liquor referendum, as the fourth proposition, should have been omitted from the ballot because only three "public questions" may be properly submitted to voters pursuant to section 28—1 of the Code (hereinafter

the three-limitation rule). To support their position, plaintiffs rely on the first paragraph of section 28—1, which subjects public questions to be voted upon by electors of "any political subdivision or district" to the provisions of article 28. Since the term "district" is described in the definitions section of the Code to include, among other areas, "precincts" (Ill. Rev. Stat. 1985, ch. 46, par. 1—3(14)), plaintiffs conclude that the three-limitation rule established in section 28—1 applies to the 16th precinct.

A closer examination of section 28—1, however, reveals that the three-limitation rule is first articulated in paragraph 6 therein, only in terms of "political subdivision[s]." The limitation is silent as to election "district[s]." It is a basic rule of statutory construction that courts must ascertain and give effect to the legislature's intention in enacting a statute. In so doing, courts are to give statutory language its plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.) When reading the three-limitation rule in conjunction with the other provisions of section 28—1, it is clear that the legislature's intent was for it to apply only to political subdivisions and not to districts. Consequently, the trial court correctly held that the rule did not preclude the local option referendum.

Even assuming that the limitation did in fact apply to the present case, plaintiffs' challenge in this regard was untimely and therefore properly dismissed. In *Carpenter v. Kozubowski* (1987), 157 Ill. App. 3d 127, 509 N.E.2d 1309, the court found that the filing of plaintiffs' election contest was governed by the 30-day provision in the Election Code as opposed to the 10-day limitation in the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 182) (Liquor Control Act), and as a result, their claim was incorrectly dismissed as it was filed within 30 days of the official canvass. In reaching its conclusion, the court distinguished between a challenge to the validity of an election as described in the Liquor Control Act and one, as in that case, which contests election results as stated in the Election Code.

Here, with respect to the three-limitation rule, only the validity of the election itself is being attacked and, thus, the 10-day contest period of the Liquor Control Act applies. Given that plaintiffs' claim was filed on December 9, 1986, more than 10 days after the official canvass on November 12, 1986, their claim in this regard is time barred. Similarly, plaintiffs failed to contest the petition for submission of the local option question 30 days prior to the election as required by section 9—4 of the Liquor Control Act. Ill. Rev. Stat. 1985, ch. 43, par. 169.

In response, plaintiffs argue that they had no notice that the local

option question would appear on the ballot until the actual day of the election. Section 9—5 of the Liquor Control Act, however, while requiring notice of a local option election be published "in the manner provided by the general election law" (Ill. Rev. Stat. 1985, ch. 43, par. 170), specifically provides that the failure to do so does "not affect the validity or binding force of the vote upon the proposition."

For the foregoing reasons, the judgment of the circuit court of Cook County to dismiss plaintiffs' complaint is affirmed.

Affirmed.

O'CONNOR and QUINLAN, JJ., concur.