# Illinois Official Reports

## Appellate Court

*Calloway v. Chicago Board of Election Commissioners,*
2020 IL App (1st) 191603

| | |
|---|---|
| Appellate Court Caption | WILLIAM CALLOWAY, Plaintiff-Appellant, v. THE CHICAGO BOARD OF ELECTION COMMISSIONERS, MARISEL A. HERNANDEZ, in Her Official Capacity as Commissioner and Chair of the Chicago Board of Election Commissioners; WILLIAM J. KRESSE and JONATHAN T. SWAIN, in Their Official Capacities as Commissioners of the Chicago Board of Election Commissioners; LANCE GOUGH, in His Capacity as Executive Director of the Chicago Board of Election Commissioners; and LESLIE HAIRSTON, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-19-1603 |
| Filed | January 17, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-COEL-34; the Hon. LaGuina Clay-Herron, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joshua Burday, Matthew Topic, and Merrick Wayne, of Loevy & Loevy, of Chicago, for appellant.<br><br>Ed Mullen, of Mullen Law Firm, of Chicago, and Michael Kreloff, of Northbrook, for appellee Leslie Hairston. |

Adam Lasker, of Lasker Law LLC, of Chicago, for other appellees.

Panel        PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Connors and Rochford concurred in the judgment and opinion.


**OPINION**

¶ 1      The plaintiff, William Calloway, appeals from an order of the circuit court of Cook County dismissing his complaint contesting the results of the election for the office of alderman of the fifth ward held on April 2, 2019. On appeal, the plaintiff argues that the circuit court erred in dismissing his complaint because he sufficiently alleged that four precincts in the fifth ward failed to comply with a mandatory provision of the Election Code. For the reasons that follow, we affirm.

¶ 2      On April 2, 2019, the plaintiff and Leslie Hairston were candidates in the runoff election for the office of alderman of the fifth ward. Preliminary results indicated that Hairston had won the election by a margin of 170 votes.

¶ 3      On April 8, 2019, the plaintiff filed a complaint contesting the election pursuant to section 21-27 of the Revised Cities and Villages Act of 1941 (65 ILCS 20/21-27 (West 2018)) and Article 23 of the Election Code (10 ILCS 5/23-1.1a *et seq.* (West 2018)). The complaint named Hairston and the Board of Election Commissioners for the City of Chicago (BOE) as defendants and alleged various irregularities as to the voting procedure and count. The plaintiff stated that he was alleging "generalities subject to later amendment" because the relevant statute required him to file the complaint within five days after the election. The plaintiff sought, *inter alia*, a full recount of the vote in all precincts of the fifth ward and a determination that he was the winner of the election.

¶ 4      On April 18, 2019, the BOE declared Hairston the winner by a margin of 176 votes. The next day, on April 19, 2019, the plaintiff invoked his statutory right to a discovery recount of up to 25% of the precincts. The plaintiff selected the following precincts: 3, 7, 9, 10, 11, 22, 27, 28, 33, and 35. On May 17, 2019, the plaintiff filed his amended complaint contesting the election. Therein, he alleged, *inter alia*, that four precincts in the fifth ward—5, 10, 17, and 35—had a missing or incomplete election night certificate of results, also known as a "Form 80," and thus failed to comply with sections 18-9 and 18-14 of the Election Code (*id.* §§ 18-9, 18-14). A Form 80 is completed by election judges for each precinct and "certifies" the following information: the hours the polls were open; the number of paper ballots received from the BOE; the number of provisional paper ballots received from the BOE; the number of voters; the number of unused ballots; the number of spoiled or damaged ballots; the number of ballots cast from public counters; the number of ballots cast from the "card activator"; and the number of write-in candidates and votes. The plaintiff alleged that the four precincts' failure to complete a Form 80 means that "the results could have been tampered with" because the results "cannot be verified or certified." The plaintiff further alleged that completing an

- 2 -

election night Form 80 is mandatory and that the remedy for failing to comply with mandatory provisions of the Election Code is to void the election and require a new election in each of the four affected precincts.

¶ 5 On May 23, 2019, Hairston filed a combined motion to dismiss the plaintiff's amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)).[1] Hairston argued that the plaintiff failed to state a cause of action pursuant to section 2-615 of the Code (*id.* § 2-615) for the following reasons: (1) the plaintiff made no assertion that the missing or incomplete Form 80s actually impacted the outcome of the election; (2) an incomplete or missing Form 80 does not impact the final proclamation because there is a statutory procedure for the Board of Elections to follow to resolve issues when there are discrepancies with the election night Form 80 and the ballots cast; (3) section 18-4 of the Election Code does not provide for a new election as a remedy when election judges fail to properly complete a Form 80; and (4) the remedy of a new election would disenfranchise a substantial portion of the total vote because the allegations concerning Form 80 are inapplicable to early votes, vote-by mail ballots, and provisional votes. Hairston also argued that the plaintiff's amended complaint should be dismissed pursuant to section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)) because the plaintiff's amended complaint is defeated by an affirmative matter, namely, the discovery recount that confirmed the vote count for the 10 selected precincts, including one precinct alleged to have no Form 80.

¶ 6 The plaintiff responded to Hairston's motion to dismiss, contending that he was not required to allege that there was an actual discrepancy in the vote total because completing a Form 80 is a mandatory requirement and is necessary to preserve the integrity of the election. The plaintiff also maintained that Hairston failed to allege an affirmative defense and, therefore, did not meet the standard for a motion to dismiss under section 2-619(a)(9).

¶ 7 On July 19, 2019, the circuit court dismissed the plaintiff's amended complaint with prejudice. In its oral pronouncement, the circuit court stated that failure to complete a Form 80 on election day was directory, not mandatory, because the General Assembly did not expressly declare it to be mandatory or essential to the validity of the election. The circuit court further stated that the plaintiff failed to allege "specific errors or particularities" to support his contention that the failure to complete a Form 80 raises questions regarding the accuracy and integrity of the election. The circuit court noted that the complaint did not "allege how the election was affected at all." The circuit court concluded that "the [complaint] is insufficient under the law under 2-615 and it is defeated by affirmative matters under 2-619." In its written order, the circuit court stated that "[t]his is a final and appealable judgment order disposing of all issues raised." This appeal followed.

¶ 8 On appeal, the plaintiff contends that the circuit court erred in dismissing his amended complaint because he sufficiently stated a claim contesting the election. Specifically, he contends that his amended complaint sufficiently alleged that the plain language of section 18-14 of the Election Code (10 ILCS 5/18-14 (West 2018)) makes completion of Form 80 by election judges on election day mandatory and that, without a completed Form 80, the election results could not be verified or certified, undermining the integrity of the election.

¶ 9 Hairston's motion to dismiss was brought pursuant to section 2-619.1 of the Code, which permits a party to move for dismissal under both sections 2-615 and 2-619 of the Code. 735

---

[1]The BOE adopted the arguments made in Hairston's combined motion to dismiss.

ILCS 5/2-619.1 (West 2018). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. A motion brought pursuant to section 2-619 admits the sufficiency of the complaint but asserts an affirmative matter that avoids or defeats the claim. *Id.* We review a dismissal under either section 2-615 or section 2-619 *de novo*. *Id.*

¶ 10    We turn first to Hairston's motion to dismiss pursuant to section 2-615 of the Code. When reviewing the sufficiency of the pleadings under a section 2-615 motion to dismiss, the circuit court must look at the allegations of the complaint when viewed in a light most favorable to a nonmoving party. 735 ILCS 5/2-615 (West 2018); *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). Under a section 2-615 motion, a circuit court should dismiss the cause of action "only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery." *Borowiec*, 209 Ill. 2d at 382-83.

¶ 11    The Election Code is a comprehensive scheme that regulates the way elections are to be carried out. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). Strict compliance with all applicable provisions in the Election Code is not necessary, however, to sustain a particular ballot. *Id.* Rather, our courts draw a distinction between violations of "mandatory" provisions and violations of "directory" provisions. *Id.* Failure to comply with a mandatory provision renders the affected ballots void, whereas technical violations of directory provisions do not affect the validity of the affected ballots. *Hester v. Kamykowski*, 13 Ill. 2d 481, 487 (1958). Whether a statute is mandatory or directory is a question of statutory construction, which we review *de novo*. *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009).

¶ 12    The plaintiff alleged that four precincts failed to complete a Form 80 as required by section 18-14 of the Election Code and that a new election should be held in those precincts. Section 18-14 states the following:

> "At the nonpartisan and consolidated elections, the judges of election shall make a tally sheet and [Form 80] for each political subdivision as to which candidates or public questions are on the ballot at such election ***. The judges shall sign, seal in a marked envelope and deliver them to the county clerk with the other certificates of results herein required. ***
>
> Within 2 days of delivery of complete returns of the consolidated and nonpartisan elections, the board of election commissioners shall transmit an original, sealed tally sheet and [Form 80] from each precinct in its jurisdiction in which candidates or public questions of a political subdivision were on the ballot to the local election official of such political subdivision where a local canvassing board is designated to canvass such votes. Each local election official, within 24 hours of receipt of all of the tally sheets and [Form 80s] for all precincts in which candidates or public questions of his political subdivision were on the ballot, shall transmit such sealed tally sheets and [Form 80s] to the canvassing board for that political subdivision." 10 ILCS 5/18-14 (West 2018).

¶ 13    According to the plaintiff, the plain language of section 18-14 makes it mandatory for election judges to fill out a Form 80 on election day, as evidenced by the General Assembly's use of the word "shall" in combination with a specific requirement regarding the timing for when the Form 80 is to be transmitted to local election officials and the canvassing board ("within 2 days of delivery" and "within 24 hours of receipt," respectively). The plaintiff further argues that, because completion of a Form 80 ensures the validity and integrity of the

election results, the proper remedy for a precinct's failure to complete one is a new election in those precincts.

¶ 14    The defendants do not dispute that four precincts in the fifth ward either filed an incomplete Form 80 or failed to complete one at all. Rather, the defendants contend that completion of a Form 80 on election night is directory, not mandatory, because the General Assembly did not expressly provide for a penalty for noncompliance. The defendants also maintain that the plaintiff misunderstands the purpose behind the election Form 80 and how it relates to other relevant provisions of the Election Code. Specifically, the defendants contend that the plaintiff's reliance on section 18-14 is misplaced, as sections 24B-15 and 24C-15 of the Election Code are the relevant provisions because they provide the procedures to be followed when, as here, votes are cast using optical scan paper ballot equipment or touch screen equipment. See *id.* §§ 24B-15, 24C-15.

¶ 15    Section 24B-15 states that

"[t]he precinct return printed by the automatic Precinct Tabulation Optical Scan Technology tabulating equipment shall include the number of ballots cast and votes cast for each candidate and proposition and shall constitute the official return of each precinct. In addition to the precinct return, the election authority shall provide the number of applications for ballots in each precinct, the write-in votes, the total number of ballots counted in each precinct for each political subdivision and district and the number of registered voters in each precinct. However, the election authority shall check the totals shown by the precinct return and, if there is an obvious discrepancy regarding the total number of votes cast in any precinct, shall have the ballots for that precinct retabulated to correct the return. *** In those election jurisdictions that use in-precinct counting equipment, the [Form 80], which has been prepared by the judges of election after the ballots have been tabulated, shall be the document used for the canvass of votes for such precinct. Whenever a discrepancy exists during the canvass of votes between the unofficial results and the [Form 80], or whenever a discrepancy exists during the canvass of votes between the [Form 80] and the set of totals which has been affixed to the [Form 80], the ballots for that precinct shall be retabulated to correct the return." *Id.* § 24B-15.

¶ 16    Similarly, section 24C-15 states that

"[t]he precinct return printed by the Direct Recording Electronic Voting System tabulating equipment shall include the number of ballots cast and votes cast for each candidate and public question and shall constitute the official return of each precinct. In addition to the precinct return, the election authority shall provide the number of applications for ballots in each precinct, the total number of ballots and vote by mail ballots counted in each precinct for each political subdivision and district and the number of registered voters in each precinct. However, the election authority shall check the totals shown by the precinct return and, if there is an obvious discrepancy regarding the total number of votes cast in any precinct, shall have the ballots for that precinct audited to correct the return. *** The certificate of results, which has been prepared and signed by the judges of election after the ballots have been tabulated, shall be the document used for the canvass of votes for such precinct. Whenever a discrepancy exists during the canvass of votes between the unofficial results and the certificate of results, or whenever a discrepancy exists during the canvass of votes

between the certificate of results and the set of totals reflected on the certificate of results, the ballots for that precinct shall be audited to correct the return." *Id.* § 24C-15.

¶ 17 The defendants argue that, although these provisions still instruct election judges to complete a Form 80, the General Assembly expressly provided a statutory process whereby the BOE, prior to the proclamation of the final certified election results, is to correct any discrepancy discovered regarding a Form 80 during the postelection canvass by retabulating the ballots and correcting the Form 80. Defendants, therefore, maintain that there is no statutory basis for ordering a new election based on an incomplete or missing election night Form 80.

¶ 18 "There is no universal formula for distinguishing between mandatory and directory provisions." *Pullen*, 138 Ill. 2d at 46. Whether a particular statutory provision is mandatory or directory is determined by the legislature's intent, "which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction." *Id.* (citing *Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233*, 14 Ill. 2d 40, 44 (1958)). "The use of the word 'shall' is generally regarded as mandatory when used in a statutory provision but can be construed as directory depending on the legislative intent." *Brennan v. Illinois State Board of Elections*, 336 Ill. App. 3d 749, 759 (2002). As our supreme court explained, a statute in the Election Code may generally be given a mandatory construction if it "expressly states that failure to act in the manner set out in the statute will void the ballot," whereas a statute may generally be construed as directory if it "simply prescribes the performance of certain acts in a specific manner, and does not expressly state that compliance is essential to the validity of the ballot." *Pullen*, 138 Ill. 2d at 46. As such, "[i]n construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, particularly where such requirements do not contribute substantially to the integrity of the election process." (Internal quotation marks omitted.) *Id.* at 47.

¶ 19 Here, we conclude that the completion of a Form 80 by election judges on election day is directory rather than mandatory. Although section 18-14 states that the election judges "shall" complete a Form 80, the General Assembly failed to provide for a consequence in the event of noncompliance, which is generally required for a provision to be deemed mandatory. See *Brennan*, 336 Ill. App. 3d at 759-60 (finding an election provision that stated the BOE "shall render its final judgment within 60 days of the date the complaint is filed" directory because the provision did not expressly provide for a penalty if the BOE failed to comply with the 60-day provision (internal quotation marks omitted)). Moreover, we agree with the defendants that the procedures outlined in sections 24B-15 and 24C-15 of the Election Code are further evidence that the General Assembly did not intend for an incomplete or missing Form 80 to result in a new election. Put simply, the General Assembly could have stated that completing a Form 80 is mandatory and failure to do so would void the impacted ballots; instead, it empowered the BOE to retabulate the actual ballots cast to resolve any discrepancies prior to the official proclamation. Therefore, the solution for when a precinct files an incomplete Form 80, or fails to complete one entirely, is for the BOE to follow the "obvious discrepancies" procedures outlined in sections 24B-15 and 24C-15 and retabulate the ballots.

¶ 20 The plaintiff nevertheless argues that, even though the statute does not provide for a penalty for noncompliance, the completion of a Form 80 by election judges on election day is mandatory because it ensures the validity and integrity of the election. See *Pullen*, 138 Ill. 2d

at 47 ("[I]n construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, *particularly where such requirements do not contribute substantially to the integrity of the election process*." (Emphasis added and internal quotation marks omitted.)). The thrust of the plaintiff's argument in this regard is that, without a completed Form 80, "there is an obvious opportunity for an unauthorized person to tamper with the election results" and "a nefarious actor could choose not to count a ballot because of the candidate being voted for on that ballot." The defendants counter that the absence of a Form 80 does not create an opportunity for tampering or nefarious conduct in an election with modern voting systems that store results electronically in memory packs and where the BOE is empowered to audit, correct, and retabulate results. We agree with the defendants.

¶ 21 "Invalidating an election is *** an extremely drastic measure, and we must distinguish between garden-variety election irregularities and those errors that are so pervasive as to undermine the integrity of the vote." *Andrews v. Powell*, 365 Ill. App. 3d 513, 522-23 (2006) (citing *Graham v. Reid*, 334 Ill. App. 3d 1017, 1024 (2002)). Here, the plaintiff has not alleged sufficient facts to demonstrate how a lack of a Form 80 could allow for such "nefarious" conduct, and the plaintiff certainly does not allege that such conduct occurred here. Though we accept all well-pled facts when reviewing a section 2-615 motion to dismiss, a complaint will not survive this analysis if it consists only of conclusory or speculative allegations. *Time Savers, Inc. v. La Salle Bank, N.A.*, 371 Ill. App. 3d 759, 767 (2007). We, therefore, conclude that the plaintiff failed to allege sufficient facts to establish how completing a Form 80 on election night ensures the validity and integrity of the election and, consequently, the circuit court did not err in dismissing his complaint because the completion of a Form 80 is not mandatory. See *Foster v. Chicago Board of Election Commissioners*, 176 Ill. App. 3d 776, 779 (1988) ("[P]leadings in an election contest charging violations of directory rather than mandatory provisions of the [Election] Code, without sufficient allegations of fraud, are subject to dismissal.").

¶ 22 In sum, we affirm the circuit court's dismissal of the plaintiff's amended complaint pursuant to section 2-615 of the Code because the plaintiff failed to sufficiently state a claim contesting the April 2, 2019, election for the office of alderman of the fifth ward. As a result of our disposition of this case, we need not address the arguments for dismissal pursuant to section 2-619 of the Code.

¶ 23 Affirmed.