# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Reicher*, 2021 IL App (2d) 200454

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MICHAEL K. REICHER III, Petitioner and Counterrespondent-Appellee, and LAURA A. REICHER, Respondent and Counterpetitioner-Appellant. |
| District & No. | Second District<br>No. 2-20-0454 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | May 6, 2021<br><br>June 18, 2021<br>June 18, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 15-D-1317; the Hon. William J. Parkhurst, Judge, presiding. |
| Judgment | Appeal dismissed in part; judgment affirmed in part. |
| Counsel on Appeal | Robin M. Zandri, of Goostree Law Group, P.C., of St. Charles, for appellant.<br><br>Stephen D. Brown, of St. Charles, and Douglas B. Warlick, of Douglas B. Warlick & Associates, of Geneva, for appellee. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1    In February 2017, the circuit court entered a judgment dissolving the marriage of petitioner, Michael K. Reicher, and respondent, Laura A. Reicher. The judgment incorporated the parties' marital settlement agreement (MSA). In December 2019, Laura petitioned the court to compel Michael's compliance with the MSA, and, in January 2020, issued subpoenas to Michael's employer and a financial institution, Fidelity Brokerage Services, LLC (Fidelity). Michael moved to quash the subpoenas and to dismiss Laura's petition. He also sought sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). The court granted Michael's motions but did not resolve the claim for sanctions.

¶ 2    Laura appeals, arguing that the court erred by quashing her subpoenas and dismissing her petition. We dismiss in part and affirm in part.

¶ 3                          I. BACKGROUND

¶ 4    Michael and Laura married in 2011. In October 2015, Michael petitioned to dissolve their marriage and, in February 2016, Laura counterpetitioned to do so.

¶ 5    In December 2016, after a prove-up hearing, the court entered a bifurcated judgment for dissolution of marriage (see 750 ILCS 5/401(b) (West 2014)), which dissolved the parties' marriage but reserved for trial the issues of property and debt allocation, maintenance, and attorney fees. At a hearing to prove up the bifurcated judgment, Michael testified that he understood any bonuses, commissions, or equity awards that he would receive between the end of 2016 and the end of 2017 could be considered to be marital property for purposes of property allocation. Accordingly, the judgment stated as follows:

> "[P]ursuant to this bifurcated judgment, the effective date for all financial issues, including the marital status for the purpose of filing income tax returns, is December 15, 2016, with the exception that any bonus, stock[,] or similar equity award that was *earned in 2016* by either [p]arty which is paid or received any time after December 15, 2016, through December 31, 2017, is deemed to be marital property. Furthermore, any such payment shall be divided in accordance with the percentage or proportion of the remaining marital estate which shall be determined at trial." (Emphasis added.)

¶ 6    While awaiting trial, the parties settled all the financial issues between them. On February 9, 2017, the court entered a final judgment for dissolution of marriage, which incorporated the MSA. At a hearing to prove up the final judgment and the MSA, Michael testified that "every financial aspect of this case" was set forth in the MSA, he had made a full and complete disclosure of his assets and income prior to signing the MSA, and the MSA contained "forward-looking provisions *** about stock options going on in the future and a bonus in the future," which would be taken care of "if and when they occur." Further, he testified he understood some discovery may be required to determine to what Laura was entitled. Laura

testified she had made a full and complete disclosure of her income, assets, and debts and understood that, if there were some undiscovered assets, those would be divided pursuant to the agreement. She also testified she understood the MSA contained provisions for future stock options and bonuses, which were left unresolved, because the parties were not yet able to determine what those were.

¶ 7    Paragraph 3.3 of the MSA stated that the parties had previously separated their joint financial accounts and were entitled to retain the entirety of those personal accounts, except as provided in paragraph 3.4. In addition, it stated that Michael "represents that there are no other undisclosed accounts; moreover, if an undisclosed account is discovered hereafter then it shall be divided as provided hereunder." Paragraph 3.4 of the MSA provided that the parties' cash and stock in three identified accounts—Fidelity account ending in 5203, Fidelity account ending in 5256, and Merrill Edge account ending in 2111—be split, with Laura receiving a 70% share and Michael a 30% share.

¶ 8    Paragraph 3.6 of the MSA stated that Laura was entitled to a one-time payment of 30% of Michael's net bonus from his 2016 employment, which was payable in 2017. It further provided that, within five days of receiving the bonus, Michael was required to calculate and make the payment and provide supporting documents to Laura. Laura had 30 days to object to his calculation. If the parties could not agree to the correct amount to be paid after her objection, she was permitted to seek relief from the court. It also stated that, if Laura did not file a motion objecting to Michael's payment or tender of related information within 60 days of her receipt of it, she was barred from seeking relief from the court.

¶ 9    Paragraph 3.7 of the MSA provided Laura was entitled to 40% of the net shares of Michael's equity awards that were granted in 2014 and 2015 and vested and payable in 2017 and 2018. It required Michael to transfer to Laura 40% of his net shares, after selling and retaining shares to cover his tax liability, no later than three days after he received the equity award. Paragraph 3.7, as well as the remainder of the MSA, stated nothing concerning equity awards earned by Michael in 2016.

¶ 10   In February 2018, Laura petitioned the court to hold Michael in indirect civil contempt, alleging Michael had failed to comply with paragraph 3.7 of the MSA by failing to transfer 40% of the net shares awarded to him in his 2014 equity awards, which became vested and payable in 2017. She also alleged that Michael failed to notify her "of all the equity awards which he was awarded in 2014 and that became vested in 2017" and that she discovered his failure only after receiving subpoenaed documents from his Merrill Edge account.

¶ 11   In November 2018, the court entered an agreed order resolving Laura's petition, requiring Michael to transfer to her 40% of the net shares awarded to him in his 2014 and 2015 equity awards. In addition, the order required him to provide to Laura's accountant documents, including his 2017 and 2018 income-tax returns, year-end pay stubs, and summary statements relating to the equity awards.

¶ 12   On December 26, 2019, Laura petitioned the court to compel Michael's compliance with the MSA. First, she asserted that she "[wa]s informed and believe[d]" that Michael opened one or more undisclosed Fidelity accounts in his name before the final judgment was entered and she was entitled to 70% of those accounts under paragraphs 3.3 and 3.4 of the MSA. She also alleged that Michael failed to comply with paragraph 3.6 of the MSA because he had not provided her with documents that would allow her to verify Michael's calculation of her share of his 2016 employment bonus. Finally, she asserted that the bifurcated judgment provided

"the effective date for all financial issues [was] December 15, 2016[,] with the exception of any bonus, stock[,] or similar equity award that was earned in 2016." She alleged that Michael had not disclosed whether he received or exercised any stock or similar equity awards in 2016 and that, under the terms of the MSA, she was entitled to 40% of the equity awards (vested or unvested) that Michael exercised or was granted in 2016. Laura sought, among other things, an order requiring Michael to provide to her (1) statements for all Fidelity accounts in his name from February 9, 2017, to January 1, 2018; (2) a copy of the pay stub he received after his receipt of his 2016 bonus (paid in 2017); (3) a complete copy of his 2017 tax returns; and (4) information concerning any stock or similar equity awards he received or exercised in 2016. She did not seek an order requiring Michael to pay her monies to which she was allegedly entitled under the MSA. On January 3, 2020, Laura issued subpoenas to Fidelity and Michael's employer.

¶ 13    In response, Michael moved to quash the subpoenas, to dismiss Laura's petition, and to receive sanctions. In his motion to quash, Michael asserted he had fully complied with all financial obligations required of him under the MSA, any issue with respect to his equity awards had been resolved by the November 2018 agreed order, and no outstanding issues remained. He further asserted that the Fidelity subpoena would not lead to relevant information to the extent it sought documents relating to accounts held before the judgment and he "should not be forced to re-litigate issues determined nearly three years ago at the time of the parties' divorce and against [*sic*] more than two years ago when the parties litigated issues pertaining to the equity awards."

¶ 14    Michael sought dismissal under sections 2-615 and 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(4) (West 2018)), as well as sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). Under section 2-615, Michael argued that Laura's petition failed to state a cause of action because he had made all payments required under the MSA and no provision of the MSA required him to disclose any further information once he had done so. Therefore, he argued, "there [was] no compliance to compel." He contended, "all issues pertaining to the equity awards were disposed of via [the November 2018 agreed order], that provided for the specific number of shares to be allocated to each party, as well as verification of [his] tax rate through an accountant retained by Laura," based on documents he tendered to the accountant. He asserted that both parties were aware at the time of the dissolution that his company did not distribute equity awards in 2016 because they were paid out in 2015, when his employer was acquired by another company, and his year-end pay stub and W-2 statement, which were tendered to Laura before the final judgment was entered, substantiated that fact. He also asserted that he had fully complied with his obligation to pay Laura 30% of his net bonus earned in 2016 and that Laura had failed to timely seek relief under paragraph 3.6 of the MSA. Michael also maintained he had complied with all discovery requests propounded by Laura—including through written discovery, a deposition, and a regularly updated comprehensive financial statement—before the final judgment was entered. Further, he argued he did, in fact, open additional Fidelity accounts during the initial proceedings, but he claimed this fact was known by Laura.

¶ 15    Under section 2-619(a)(4), Michael argued that the final dissolution judgment, which incorporated the MSA, was a final adjudication of the respective rights of both parties as to the bonus he earned in 2016 and was paid in 2017. According to Michael, Laura was barred from

seeking documents to verify the amount of his bonus to which she was entitled because she failed to file an appropriate motion within the time specified by paragraph 3.6 of the MSA.

¶ 16 On May 28, 2020, the court held a hearing on Michael's motion to quash, and the court granted it "for the reasons set forth in [the motion]." The record on appeal does not contain a verbatim transcript, an agreed statement of facts, or a bystander's report showing what transpired at the hearing. Laura moved to reconsider the court's order granting the motion to quash. The court denied her motion.

¶ 17 On July 28, 2020, after a hearing, the court entered an order granting Michael's motion to dismiss.[1] The order stated, "Motion to Dismiss Motion [*sic*] to Compel Compliance with Judgment for Dissolution of Marriage and For Sanctions is granted." It further stated (1) count II of the motion, which sought, under section 2-619(a)(4) of the Code, dismissal of Laura's claim related to Michael's 2016 employment bonus, was granted and (2) count I of the motion, which sought dismissal, under section 2-615 of the Code, of Laura's claim related to the undisclosed marital brokerage accounts and the 2016 equity award, was granted because "no further compliance [wa]s required [of Michael]." (Laura does not raise any issue with the court's dismissal of the claim related to Michael's 2016 employment bonus.) The order was silent as to count III of Michael's motion, which asserted the claim for sanctions under Rule 137, and did not fix the amount of sanctions to which Michael would be entitled. At Laura's request, the order included a finding, under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that "there [was] no just reason for delaying either enforcement or appeal or both."

¶ 18 On August 14, 2020, Laura filed a notice of appeal, identifying the following two orders from which the appeal was taken: (1) the July 22, 2020, order denying her motion to reconsider the order quashing the subpoenas and (2) the July 27, 2020, order dismissing her petition to compel compliance.

¶ 19 II. ANALYSIS

¶ 20 On appeal, Laura argues that the circuit court erred by granting Michael's motion to quash the subpoenas and his motion to dismiss her petition to compel compliance with the paragraphs of the MSA relating to the 2016 equity awards and the previously undisclosed financial accounts.

¶ 21 A. Jurisdiction

¶ 22 We first address our jurisdiction to consider Laura's appeal. See *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994) (appellate court has independent duty to consider its jurisdiction before proceeding to the merits of the case). Laura asserts this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017). She contends the judgment in this case was final because "it resolve[d] all issued raised in both parties' petitions." She does not assert that this court has jurisdiction under Rule 304(a), even though she specifically requested, and the court included, such a finding in its order granting Michael's motion to dismiss. For the reasons set forth below, we conclude we (1) lack jurisdiction to review the orders quashing Laura's subpoenas

---

[1]The hearing was held on July 27, 2020.

and denying her motion to reconsider the order to quash and (2) have jurisdiction to review the order granting Michael's motion to dismiss.

¶ 23    Laura petitioned the court to compel Michael to comply with various provisions of the MSA and issued to two entities subpoenas seeking documents relating to her petition. Michael, in turn, moved to quash the subpoenas and dismiss Laura's petition to compel. In his motion to dismiss, Michael also asserted a claim for sanctions under Rule 137. While the court entered orders quashing the subpoenas, denying Laura's motion to reconsider the order to quash, and dismissing her petition to compel compliance, the record does not show that the court ruled on Michael's claim for sanctions. (Admittedly, the court's order stated that Michael's motion to dismiss and for sanctions was "granted." However, the specific language of the order did not address Michael's sanctions claim, and, in any event, did not award sanctions to Michael.) Accordingly, the orders from which Laura appealed—the orders denying her motion to reconsider and dismissing her petition under sections 2-615 and 2-619(a)(4) of the Code—were not final and appealable orders. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) ("A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)."); *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 340 (2001) (a Rule 137 motion is the functional equivalent of adding an additional count to a complaint or counterclaim, depending on which party files the motion; and since a Rule 137 motion is a claim within the proceeding, a notice of appeal cannot be filed before the court has ruled on the motion, absent a finding under Rule 304(a)). Accordingly, we must determine whether we have jurisdiction over this appeal under Rule 304(a).

¶ 24    Rule 304(a) states, in pertinent part, as follows:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims *only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both.* *** The time for filing a notice of appeal shall be as provided in Rule 303. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

Accordingly, to appeal from the orders entered in this case, the record must show that the circuit court made the special finding required under Rule 304(a) as to each of them and that Laura filed her notice of appeal within 30 days of each order. See Ill. S. Ct. R. 303 (eff. July 1, 2017); R. 304(a) (eff. Mar. 8, 2016).

¶ 25    As noted, Laura appeals from two separate orders: (1) the order denying her motion to reconsider the order quashing the subpoenas and (2) the order dismissing her petition to compel Michael's compliance with the MSA. We turn first to the order denying her motion to reconsider the order quashing the subpoenas.

¶ 26    Laura's notice of appeal specified the order denying her motion to reconsider but not the order quashing the subpoenas. However, "[t]ypically, the designation of a judgment resolving a motion to reconsider is held to confer jurisdiction also of the judgment of which reconsideration was sought." *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 51. Yet neither the order quashing the subpoenas nor the order denying the motion to reconsider contain a Rule 304(a) finding, and the record does not otherwise clearly indicate that the court

found either order to be immediately appealable under the rule. See *In re Marriage of Morgan*, 2019 IL App (3d) 180560, ¶ 12 (circuit court need not track the precise language of Rule 304(a), but, to invoke the rule, the record must clearly indicate the court's intent to do so). And, even if the court made the special finding required under the rule, we would not have jurisdiction to review the orders. An order granting or denying a motion to quash a subpoena is not a final or appealable order (see *Kmoch v. Klein*, 214 Ill. App. 3d 185, 191 (1991)), and the inclusion of Rule 304(a) language cannot transform a nonfinal and nonappealable order into a final and appealable one (*Ely v. Pivar*, 2018 IL App (1st) 170626, ¶ 40). Accordingly, we do not have jurisdiction to review the propriety of the orders quashing Laura's subpoenas and denying her motion to reconsider, and we dismiss that portion of this appeal.

¶ 27    Turning to the order dismissing Laura's petition, we conclude we have jurisdiction under Rule 304(a) to review the propriety of the order. The order dismissing Laura's petition, entered on July 27, 2020, was final and appealable, save for the fact Michael's claim for sanctions remained pending. The circuit court found "there [was] no just reason for delaying enforcement or appeal or both." See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). On August 14, 2020, within 30 days of that order, Laura filed her notice of appeal. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); R. 304(a) (eff. Mar. 8, 2016). Accordingly, we have jurisdiction to review the circuit court's order dismissing Laura's petition.

¶ 28                                B. Laura's Compliance With Rule 341

¶ 29    In his brief, Michael contends that Laura's brief fails to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) and asks us to "consider whether it would be proper to dismiss [the] appeal" due to that lack of compliance. Specifically, he asserts that Laura's brief (1) contains more than seven pages of single-spaced block quotations, which are disfavored; (2) contains an argumentative and/or misleading statement of facts, which "lifted statements out of the pleadings as if [they] were the only basis for the pleadings," stated that the court granted the motion to quash "for the reasons set forth in the [m]otion," and omitted the fact a full but untranscribed hearing was held on the motion to quash; and (3) fails to cite relevant authority, other than that setting forth boilerplate law, to support her contentions of error. He argues that the supreme court rules governing the content and form of appellate briefs are mandatory and it would be appropriate for this court to strike her brief and dismiss her appeal.

¶ 30    The supreme court rules governing the form and content of appellate briefs are not mere suggestions but, rather, are mandatory and have the force of law. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. The failure to comply with the rules is not an inconsequential matter and may justify striking the brief and dismissing the appeal. *Id.* ¶¶ 7, 15. The purpose of the rules is to require parties to present clear and orderly arguments so the reviewing court can properly ascertain and dispose of the issues involved. *Id.* ¶ 7. The striking of a party's brief and dismissal of the appeal, however, is a harsh sanction, which is ordinarily reserved for the most egregious failures to comply with the rules and those that hinder our review. *Id.* ¶ 15.

¶ 31    We conclude such a sanction is not appropriate in this case. First, we note Laura's brief does, in fact, contain lengthy single-spaced block quotations from the judgment, MSA, parties' pleadings, and report of proceedings. Under Rule 341(a), "lengthy quotations are not favored and should be included only where they will aid the court's comprehension of the argument." Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020). But we do not find the lengthy quotations necessarily

violate the rule. The issue at hand is whether Laura's petition stated a claim that Michael failed to comply with the judgment and the MSA. Thus, the substance of Laura's petition, the judgment, and the portions of the MSA on which she relied are highly pertinent to our review. Laura's use of quotations sets forth with precision the allegations of her petition, and the language of the judgment and the MSA aid our comprehension of the issue presented. See *id.*

¶ 32 Second, we disagree with Michael's contention that Laura's statement of facts is argumentative or misleading. We see no deliberate effort on Laura's part to infuse comment or argument into her statement of facts or mislead this court as to the pertinent facts of this case. Rather, Laura's brief fairly and accurately sets forth most of the pertinent facts of the case, without comment and argument and with appropriate references to the pages of the record on appeal. Even where her recitation of the facts omitted some of the bases of his pleadings, we were nevertheless able to find them in the record on appeal. It is true, as Michael asserts, that Laura failed to include a report of proceedings of the hearing on his motion to quash, but we fail to see how that is misleading where her statement of facts adequately informs us that a hearing, in fact, took place.

¶ 33 We are troubled, however, by the dearth of authority cited by Laura in her brief. Laura's brief cites a total of four cases, two of which set forth the applicable standards of review, while the other two set forth boilerplate law concerning the scope of discovery and the standards applicable to section 2-615 motions. She has otherwise failed to cite *any* authority to support her contentions. She does not cite even a single case setting forth what a viable claim would allege, which is a necessary part of our analysis as to whether the court erred by dismissing her petition under section 2-615. (We also note Laura failed to cite any authority in her reply brief, after Michael called her failure to her attention.) Simply put, a written argument in this court requires more than what Laura has placed before us. This court is not a repository into which a party may dump the burden of argument and research. *See v. Illinois Gaming Board*, 2020 IL App (1st) 192200, ¶ 24; *Hall*, 2012 IL App (2d) 111151, ¶ 13. To be clear, Laura presents some argument on the issues raised in this appeal, unlike the cursory arguments raised by the appellants in *See* and *Hall*. The problem, however, is her failure to cite pertinent authority to support her arguments. This plainly violates Rule 341(h)(7) and results in forfeiture of her arguments. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Hall*, 2012 IL App (2d) 111151, ¶ 13. In any event, putting aside Laura's failure, we find the circuit court properly dismissed Laura's petition.

¶ 34                                   C. The Order Dismissing Laura's Petition

¶ 35 Laura challenges only the portion of the court's order dismissing, under section 2-615 of the Code, the portions of her petition based on the provisions of the MSA that (1) identified and distributed the parties' marital brokerage accounts and (2) governed the distribution of Michael's 2014 and 2015 equity awards, which were to become vested and payable in 2017 and 2018, respectively.

¶ 36 A motion filed under section 2-615 of the Code challenges the legal sufficiency of the complaint. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. Such a motion essentially states, "So what? The facts the plaintiff has pleaded do not state a cause of action against me." (Internal quotation marks omitted.) *Id.* When deciding such a motion, the court must consider whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff and taking all well-pleaded facts and all reasonable inferences that

- 8 -

may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted. *Id.* However, a court need not draw unreasonable or unwarranted inferences to sustain the sufficiency of the complaint. *Costa v. Stephens-Adamson, Inc.*, 142 Ill. App. 3d 798, 802 (1986). In opposing a section 2-615 motion, "a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Nor can a plaintiff rely on speculative allegations of fact in stating a claim. *Calloway v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 191603, ¶ 21.

¶ 37        A court must not dismiss a complaint under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. In ruling on such a motion, the court considers only (1) the facts apparent from the face of the pleadings, (2) matters that are subject to judicial notice, and (3) judicial admissions contained in the record. *Id.* We review *de novo* the dismissal of a complaint under section 2-615. *Id.*

¶ 38        Regarding the allegedly undisclosed Fidelity accounts, Laura argues that the MSA placed no limitation on the timeframe in which she could seek to enforce the provision to receive her 70% share of an account discovered after the date of the MSA. She asserts her allegation that she "[wa]s informed and believe[d]" that Michael had opened one or more Fidelity accounts in his individual name prior to entry of the final judgment was sufficient to state a claim that Michael failed to comply with the MSA.

¶ 39        To state a claim for breach of a settlement agreement, the plaintiff must plead facts establishing (1) the existence of the settlement agreement, (2) the performance of his or her own obligations under the agreement, (3) failure by the defendant to perform his or her obligations, and (4) a resulting injury. See *Wilkonson v. Yovetich*, 249 Ill. App. 3d 439, 449 (1993).

¶ 40        Initially, we take note of the relief sought by Laura in her petition to compel compliance. Her petition sought an order requiring Michael to provide her documentation relating to, among other things, (1) purportedly previously undisclosed Fidelity accounts and (2) any equity award granted to or exercised by Michael in 2016. Essentially, then, Laura's petition sought discovery, not affirmative relief under the terms of the MSA. In other words, her petition sought to obtain evidence that could have supported a petition to compel Michael to provide her monies to which she was entitled under the MSA. With this context in mind, we turn to the allegations of Laura's petition.

¶ 41        In her petition, other than a recitation of the terms of the MSA, Laura's sole allegation was that she was "informed and believe[d]" that Michael opened one or more accounts with Fidelity in his individual name prior to the final judgment, which he failed to disclose to her. We conclude that this allegation was not sufficient to state a claim upon which relief could be granted.

¶ 42        Allegations made on information and belief are not the equivalent of allegations of relevant fact. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40 (citing *Whitley v. Frazier*, 21 Ill. 2d 292, 294 (1961)). "In some cases, certain relevant facts of a cause of action will not be known to the plaintiff." *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 83. A plaintiff may sometimes be forced to present allegations that are based on information and belief, particularly when the necessary facts are within the defendant's sole knowledge. *Id.* In such circumstances, "a complaint which is as complete as the nature of the case allows is

sufficient." (Internal quotation marks omitted.) *Id.* However, a plaintiff has knowledge of what he or she did to learn the facts alleged on information and belief, and he or she should allege any efforts taken to discover them. *Id.*

¶ 43 Simply put, Laura's unsupported allegation, based on information and belief, that Michael opened and failed to disclose one or more brokerage accounts prior to the final judgment was not sufficient to state a claim. Laura failed to plead any facts that set forth *how* she formed her belief that Michael had established these accounts prior to the dissolution of the marriage. Without such facts, we cannot determine whether her allegation was anything other than mere speculation, and it cannot survive a section 2-615 motion. See *Calloway*, 2020 IL App (1st) 191603, ¶ 21. In essence, Laura's petition was a fishing expedition, based on an unsubstantiated allegation, in which she sought to obtain evidence that *could* support a claim for breach of the MSA. This conclusion is made clear by her prayer for relief, which sought an order compelling Michael to provide her with documents, not an order compelling Michael to pay her certain monies to which she was entitled.

¶ 44 We turn next to Laura's claim based on her purported entitlement to a portion of Michael's 2016 equity bonus. Laura argues that, under the terms of the bifurcated judgment, which "stands alone and is separate and independent" from the final judgment incorporating the MSA, any equity awards granted to Michael in 2016 were marital property subject to division between the parties. She asserts, "[w]hile the [MSA] do[es] not specifically reference equity awards that were granted to Michael in 2016, this does not bar Laura from obtaining her share of those equity awards as the [b]ifurcated [j]udgment specifically identifies them as marital property." She also argues that the equity awards "could also qualify as undisclosed assets," which would be subject to paragraph 3.4 of the MSA.

¶ 45 Michael responds that he fully complied with the agreement and no compliance could be compelled. Therefore, he argues, the petition failed to state a cause of action. In other words, Michael argues that the MSA did not impose upon him a duty to disclose to Laura information related to his 2016 equity award and pay her a portion thereof. We agree with Michael.

¶ 46 On December 15, 2016, the circuit court entered a bifurcated judgment for dissolution of marriage, which dissolved the parties' marriage but reserved all financial issues for trial. The bifurcated judgment stated any equity award *earned* in 2016 and paid between December 15, 2016, and December 31, 2017, was marital property, which would be divided as determined at trial. On February 9, 2017, the court entered a final judgment, which incorporated the MSA. The final judgment noted that the bifurcated judgment had reserved the financial issues and found the parties had "subsequently resolved *all of those financial issues*" and "*all of those terms and provisions*" were set forth in the MSA. (Emphases added.) Paragraph 3.7 of the MSA provided that Laura was entitled to a share of the equity awards Michael had earned in 2014 and 2015 and set forth the procedure under which the amount of Laura's share was to be determined when those awards were ultimately paid in 2017 and 2018. It was silent, however, as to any equity award Michael earned in 2016.

¶ 47 We conclude that the MSA's silence concerning any equity award Michael would have earned in 2016 evidences the parties' intent not to include such an award in the property division. The parties entered into the MSA on February 9, 2017, *after* Michael would have earned any 2016 equity award. If the parties had intended to include a division of any equity award earned by Michael in 2016, they would have included it in the MSA, particularly when they included his 2014 and 2015 equity awards that were yet to be paid. The language of the

final judgment and Michael's testimony at the prove-up hearing support our conclusion. The final judgment specifically stated that the parties had resolved "*all* of th[e] financial issues," which had previously been reserved for trial, and "*all* of th[e] terms and provisions" concerning those issues were set forth in the MSA. (Emphases added.) At the prove-up hearing, Michael confirmed that "every financial aspect of the case" was set forth in the MSA.

¶ 48 The language in the bifurcated judgment on which Laura focuses—stating the effective date for all financial issues was December 15, 2016 (the date the bifurcated judgment was entered), with the exception of any bonus, stock, or similar equity award earned in 2016 and paid on or before December 31, 2017—does not change our conclusion. That language merely set forth that the effective date for all financial issues was December 15, 2016, except that any equity award Michael earned in 2016 would also be included in the marital estate and be subject to division at trial. Two months later, when the parties settled the issue of the division of marital property, they did not include any equity award Michael may have earned in 2016. Accordingly, we conclude, pursuant to the terms of the MSA, that Laura was not entitled to a share of any equity award Michael may have earned in 2016, and, therefore, Laura could not prove any set of facts that would entitle her to relief. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 25.

¶ 49 As a final matter, we briefly address and reject Laura's argument that any 2016 equity awards could be classified as undisclosed assets under paragraph 3.4 of the MSA. Her one-sentence argument, unsupported by citation to authority, fails to comply with Rule 341(h)(7), and, in any event, she did not raise this argument in the circuit court. It is, therefore, forfeited. See *Hall*, 2012 IL App (2d) 111151, ¶ 13; *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶¶ 14-15.

¶ 50         III. CONCLUSION

¶ 51 For the reasons stated, we dismiss the appeal in part and otherwise affirm the judgment of the circuit court of Kane County.

¶ 52 Appeal dismissed in part; judgment affirmed in part.